FILED

DEC - 6 2018

UNITED STATES DISTRICT COURT

for the

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

Southern District of Illinois

Hosam Maher Smadi

_____

_____

_____

*Plaintiff/Petitioner(s)*

v.

William True

T.C. Brown

Gary Burgess

Kathy Hill

S Byram *Defendant/Respondent(s)*

J Michaelis

)
)
)
)
)
)
)
)
)
)
)
)
)

Case Number: 18-2149-JPG

(Clerk's Office will provide)

☐ CIVIL RIGHTS COMPLAINT
pursuant to 42 U.S.C. §1983 (State Prisoner)

☒ CIVIL RIGHTS COMPLAINT
pursuant to 28 U.S.C. §1331 (Federal Prisoner)

☒ CIVIL COMPLAINT
pursuant to the ~~Federal Tort Claims Act,~~
~~28 U.S.C. §§1346, 2671-2680,~~ or other law

42 USC §2000bb Religious Freedom
Restoration Act

I.    JURISDICTION

Plaintiff:

A.    Plaintiff's mailing address, register number, and present place of
confinement.

Hosam Smadi #39482-177
USP-Marion
PO Box 1000
Marion, IL 62959

Defendant #1:

B.    Defendant   William True   is employed as
(a)        (Name of First Defendant)

Warden
(b)              (Position/Title)

with   USP-Marion PO Box 1000 Marion, IL 62959
(c)       (Employer's Name and Address)

_____

At the time the claim(s) alleged this complaint arose, was Defendant #1
employed by the state, local, or federal government? ☒ Yes  ☐ No

If your answer is YES, briefly explain:

William True is an employee of the Bureau of Prison ("BOP")

Defendant #2:

C.     Defendant T.C. Brown _____ is employed as

                        (Name of Second Defendant)

       Intelligence Analyst
       _____
                        (Position/Title)

with   Bureau of Prison Morgantown, WV
       _____
                    (Employer's Name and Address)

_____

At the time the claim(s) alleged in this complaint arose, was Defendant #2
employed by the state, local, or federal government?   ☒ Yes      ☐ No

If you answer is YES, briefly explain:

T.C.Brown is an employee of the BOP.


**Additional Defendant(s) (if any):**

D.     Using the outline set forth above, identify any additional Defendant(s).

Gary Burgess -- Case Manager, USP-Marion
Kathy Hill -- Intelligence Research Analyst, USP-Marion
S Byram -- Unit Manager, USP-Marion
J Michaelis -- Food Services Manager, USP-Marion

II.   PREVIOUS LAWSUITS

    A.   Have you begun any other lawsuits in state or federal court relating to your imprisonment?   ☒ Yes   ☐ No

    B.   If your answer to "A" is YES, describe each lawsuit in the space below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline. <u>Failure to comply with this provision may result in summary denial of your complaint</u>.

        1.   Parties to previous lawsuits:
            Plaintiff(s):

                `as attached`

            Defendant(s):

                `as attached`

        2.   Court (if federal court, name of the district; if state court, name of the county):
            `as attached`

        3.   Docket number:
            `as attached`

        4.   Name of Judge to whom case was assigned:
            `as attached`

        5.   Type of case (for example: Was it a habeas corpus or civil rights action?):

            `as attached (criminal/habeas)`

        6.   Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?):
            `as attached`

        7.   Approximate date of filing lawsuit:
            `as attached`

        8.   Approximate date of disposition:
            `as attached`

LITIGATION HISTORY
------------------

Sep 2009:   United States v Smadi ND Tx 09-cr-294-M(01)

* criminal case alleging attempted use of a weapon of mass destruction

* convicted, sentenced to 24 years imprisonment

* appeal dismissed Oct 21, 2011  United States v Smadi 446 F Appx 679 (5th Cir 2011) (per curiam)

* 28 USC §2255 denied May 16, 2013.  Smadi v United States ND Tx 12-cv-4154-M-BK

* multiple 60(b) motions

* leave to file second/successive 28 USC §2255 denied 2017 Smadi v United States 17-cv-0221-M-BK

Apr 2018:   Smadi v True SD Ill 18-cv-555-DRH

* pending non-frivolous 28 USC §2241 action

Aug 2018:   Smadi v True SD Ill 18-cv-01462-SMY

* pending non-frivolous 28 USC §2241 action

Sep 2018:   Smadi v True SD Ill 18-cv-01507-SMY

* pending non-frivolous 28 USC §2241 action

Sep 2018:   Smadi v True SD Ill 18-cv-01547-SMY

* pending non-frivolous 28 USC §2241 action

Sep 2018:   Smadi v True SD Ill 18-cv-1702-MJR

* pending non-frivolous 28 USC §2241 action

Oct 2018:   Smadi v True SD Ill 18-cv-1938-NJR

* pending non-frivolous 28 USC §2241 action

III.    GRIEVANCE PROCEDURE

A.    Is there a prisoner grievance procedure in the institution? ☒ Yes    ☐ No

B.    Did you present the facts relating to your complaint in the prisoner
grievance procedure?                                                ☒ Yes    ☐ No

C.    If your answer is YES,
1.    What steps did you take?

`exhausted all available remedy through BP-11 for each claim.`

2.    What was the result?

`denied`

D.    If your answer is NO, explain why not.

`n/a`

E.    If there is no prisoner grievance procedure in the institution, did you
complain to prison authorities?                                    ☐ Yes    ☐ No
`n/a`

F.    If your answer is YES,
1.    What steps did you take?

`n/a`

2.    What was the result?

`n/a`

G.    If your answer is NO, explain why not.

`n/a`

H.    Attach copies of your request for an administrative remedy and any
response you received.  If you cannot do so, explain why not:

`as attached`

**Administrative Remedy No. 909636-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal where you raise issues regarding what constitutes special mail in the Communications Management Unit (CMU) at USP Marion. You believe staff are violating diplomatic and international law by treating mail to an Embassy as general correspondence. You request incoming/outgoing Embassy mail be afforded special mail privileges.

The Warden and Regional Director adequately addressed your complaint and we concur with the responses provided. You have been advised of what constitutes special mail in the CMU at USP Marion. All other mail is treated as general correspondence and there is no evidence this practice violates any applicable laws. Safety and security is paramount and we find USP Marion is in compliance with Bureau policy regarding this matter.

Accordingly, your appeal is denied.

| | |
|---|---|
| ᴧ ᴧ⁊Ꭵ⁊ | ₋ ₋₋₋Ⅼ Ꮯ |
| Date | Ian Connors, Administrator<br>National Inmate Appeals |

Administrative Remedy No. 926216-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal where you claim your electronic correspondence was
improperly rejected at USP Marion.  You argue your emails do not
advocate violence and believe you are being discriminated
against because you are Sunni Muslim.  You request your emails
be sent out.

The Warden and Regional Director adequately addressed your
complaint regarding the processing and monitoring of your
electronic correspondence.  Staff's actions regarding this
matter were consistent with Bureau policy and we concur with the
responses you were provided.  Safety and security is paramount
and your claim of discrimination is not supported.

Accordingly, your appeal is denied.

_____5 130 l 18_____                    _____
Date                                      Ian Connors, Administrator
                                          National Inmate Appeals

Administrative Remedy No. 933831-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal where you claim staff in the Communications Management
Unit (CMU) at USP Marion refused to mail out your package.  You
state you were not mailing out hobby craft items and other
inmates have mailed out similar materials.  You believe your
Constitutional rights are being violated and request the
materials be mailed out of the institution.

The Warden and Regional Director adequately addressed your
complaint and we concur with the responses provided.  You have
been advised of the current policy in regards to hobby craft
items made by inmates housed in the CMU.  In addition, your
specific allegation of staff misconduct was referred to the
appropriate authority for review.  A thorough review will be
conducted and proper action taken as deemed necessary.

This response is provided for informational purposes.

_____Ce|2γ|18_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals RmE

Administrative Remedy No. 929654-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal in which you contend staff failed to follow policy with regard
to your correspondence restrictions.  Specifically, you claim staff
violated your rights by rejecting your outgoing mail and you also
claim the outgoing mail rejection limited your access to the courts.
For relief, you request staff adhere to policy requirements when
handling your mail.


We have reviewed documentation relevant to your appeal and, based
on the information gathered, concur with the manner in which the
Warden and Regional Director addressed your concerns at the time of
your Request for Administrative Remedy and subsequent appeal.
Program Statement 5265.14, <u>Correspondence</u>, provides that "The Warden
shall establish and exercise controls to protect individuals, and
the security, discipline, and good order of the institution."
Staff determinations regarding this matter are both in the scope of
policy and demonstrate a reasonable exercise of sound correctional
judgment which is believed to be in the best interests of the
correctional environment.  We concur with that assessment.

Accordingly, this response is for informational purposes only.


_____5 | 8 | 18_____                    _____
Date                                    Ian Connors, Administrator
                                        National Inmate Appeals

Administrative Remedy Number 936164-A1
Part B - Response


This is in response to your Central Office Administrative Remedy
Appeal wherein you claim your outgoing mail was improperly rejected
and seized.  For relief you request the mail be returned to allow
for mailing.

We have reviewed documentation relevant to your appeal and, based
on the information gathered, concur with the manner in which the
Warden and Regional Director addressed your concerns at the time of
your Request for Administrative Remedy and subsequent appeal.  Staff
actions in this matter are consistent with the requirements of
Program Statements 5800.16, Mail Management Manual, 5265.14,
Correspondence and 5214.02, Communications Management Units.  You
provide no new information that had not been considered at the lower
levels that would compel us to reverse those decisions.

Accordingly, your appeal is denied.


___8|27|18___
Date

_____
Ian Connors, Administrator
National Inmate Appeals

Administrative Remedy No. 936162-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal where you challenge your continued placement in the
Communication Management Unit (CMU) at USP Marion.  You contend your
CMU placement is not to monitor your communications but meant to
target, harass and discriminate against you in violation of your
Constitutional rights.  You allege an abuse of policy and request
transfer to an FCI.

A review of your appeal reveals you were initially approved for
transfer to a CMU in December 2010, and in September 2015, it was
determined you should be transferred to the CMU at USP Marion.  The
Warden and Regional Director adequately addressed your complaint
and correctly advised you of the basis for your continued placement
in the CMU program.  We concur that your CMU placement remains
appropriate as you continue to require heightened monitoring.  Staff
will continue to monitor and periodically review your case for
appropriate placement at your scheduled program reviews.

In addition, you are afforded the ability to appeal any decisions
related to your housing, designation and classification status
through the administrative remedy program.  We find staff has
exercised sound correctional judgment in this matter and there is
no evidence you are being targeted, discriminated against or
harassed.  Your claim that your Constitutional rights have been
violated is without merit.

Accordingly, your appeal is denied.


_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

Administrative Remedy No. 946613-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal wherein you claim your constitutional rights are being
violated in the Communications Management Unit because the
amount of phone calls and length of the phone calls are limited.
For relief, you request additional phone time per week and the
opportunity to communicate with your family.

We have reviewed documentation relevant to your appeal and,
based on the information gathered, concur with the manner in
which the Warden and Regional Director addressed your concerns
at the time of your Request for Administrative Remedy and
subsequent appeal.  Staff determinations in this matter are
consistent with the requirements of Program Statement 5214.02,
Communications Management Unit).

Accordingly, your appeal is denied.

_____9\14\18_____
Date

$\overline{\phantom{xxx}}$
Ian Connors, Administrator,
National Inmate Appeals

Administrative Remedy No. 932791-A1
Part B - Response


This is in response to your Central Office Administrative Remedy
Appeal where you claim USP Marion violated your rights by
blocking a contact.  For relief, you request that your contact
be restored and the violation of your rights to cease.

Our review of your appeal reveals that the Warden and Regional
Director adequately addressed your issue at the time of your
lower-level grievances and we concur with the responses
provided.  Your contact was blocked because information they
provided could not be verified.  We find that this demonstrates
sound correctional judgement and not staff misconduct.

Accordingly, your appeal is denied.


7/19/18
Date

Ian Connors, Administrator
National Inmate Appeals

Administrative Remedy No. 937921-A1
Part B - Response


This is in response to your Central Office Administrative Remedy
Appeal wherein you request the Food Service Department at
USP Marion accommodate your religious dietary needs as a Muslim
by providing you with certified Halal food items.

We have reviewed the documentation related to your appeal.
Based on this review, we concur with the manner in which the
Warden and Regional Director addressed your concerns.  Program
Statement 5360.09, Religious Beliefs and Practices, section 18,
part a, states: "The Bureau provides inmates requesting a
religious diet reasonable and equitable opportunity to observe
their religious dietary practice within the constraints of
budget limitations and the security and orderly running of the
institution and the Bureau through a religious diet menu."  The
religiously certified meals, in conjunction with the no-flesh
menu, currently being served are adequate and afford inmates a
reasonable and equitable opportunity to meet their religious
dietary requirements.

We advise you that the Bureau of Prisons (BOP) is currently
evaluating the feasibility of providing certified Halal
prepackaged meals that meet the BOPs specifications.  In the
interim, you may to continue to purchase any Halal items
available for inmate purchase in the Commissary.  Additionally,
you are allowed to purchase Halal certified entrees through the
Special Purpose Order (SPO) procedures as prescribed in Program
Statement 4500.12, "Trust Fund/Deposit Fund Manual",
Chapter 3.3, part f (3).

Accordingly, this response is provided for informational
purposes only.


_10/22/18_
Date

_____
Ian Connors, Administrator
National Inmate Appeals

STATEMENT OF THE CLAIM
----------------------

Summary
-------

1) This is a complaint by a federal prisoner alleging violations of US Const Amend I, and, the Religious Freedom Restoration Act, at the United States Penitentiary ("USP") -- Marion Communications Management Unit ("CMU").

Parties, Jurisdiction, Venue
----------------------------

2) Hosam Smadi is a citizen of the nation of Jordan, and, a federal inmate serving a 288-month sentence for attempted use  of a weapon of mass destruction in the CMU at USP-Marion in Marion, Illinois.

3) William True is the Warden of USP-Marion, and, has the personal authority to remedy each of the wrongs alleged herein.

4) [deleted -- intentionally blank]

5) T.C. Brown is an Intelligence Analyst ("IA") assigned to censoring the communications, and, public contacts, of Smadi.

6) Gary Burgess is the Case Manager of the USP-Marion CMU.

7) Kathy Hill is the Intelligence Research Analyst, USP-Marion CMU.

8) S Byram is the Unit Manager of the USP-Marion CMU.

9) J Michaelis is the Food Services Administrator at USP-Marion.

10) This Court has jurisdiction to declare the rights of the parties, and. to enjoin the un-Constitutional use of executive authority, pursuant to <u>Marbury v Madison</u> 5 US 137 (1803).

11) This Court has jurisdiction to impose nominal, compensatory, and, punitive, damages on the Defendants pursuant to <u>Bivens v Six Unknown Named Agents Of The Federal Bureau Of Narcotics</u> 403 US 377 (1971).

12) This Court has jurisdiction over the Religious Freedom Restoration Act claims pursuant to 42 USC §2000bb.

13) All of the events alleged herein occurred at the USP-Marion CMU within the Southern District of Illinois, giving this Court venue pursuant to 28 USC §1341(a).

Factual Background
------------------

Smadi's Criminal Case
---------------------

14) In January 2009, Smadi was an eighteen year old living in Dallas, Texas, and, working as a cashier at a Shell gas station.

15) Smadi suffers from schizophrenia, which is a degenerative brain disease that creates delusions, and, poor judgment, in its early stages, usually in the late teens to early twenties, which become full fledged psychosis in the mid-twenties to mid-thirties.

16) In January 2009, Smadi posted comments on an internet messageboard expressing his disapproval of the mass murder of Palestinian civilians by the "Israeli" Defense Forces during the Gaza conflict.

17) Unknown to Smadi at the time, the Federal Bureau of Investigation ("FBI") was at that time monitoring internet messageboards as part of their mission to protect "Israel" from any form of public criticism.

18) Smadi's comments were noted, and, referred to the FBI's Dallas

-7-

Joint Terrorism Task Force ("JTTF").

19) The Dallas JTTF identified Smadi, and, contacted him;  soon after, the FBI's Psychological and Behavioral Analysis Unit ("PBAU") determined that Smadi was severely mentally ill, likely not a threat, not particularly religious, not tied to extremist groups, but, particularly vulnerable to manipulation because of his mental illness, and, disability.

20) Using the information of _para_ 19, supra, the Dallas JTTF decided to manipulate Smadi into believing that he was part of an al-Qaeda terror cell so that they could arrest Smadi, and, mislead the public into believing that the FBI had stopped an imminent al-Qaeda attack on Dallas.

21) During the period January 2009 to September 2009, the FBI "groomed" Smadi to make him believe that he was a "violent extremist"; when Smadi refused to commit violent acts, the FBI, knowing that Smadi was addicted to drugs, and, about to become homeless, promised Smadi $100,000 cash, a BMW, a job, and, a personal meeting with Osama bin Laden, if he would agree to drive a car approximately 100 yards, and, park it in the Fountainplace building in Dallas.

22) As a result of the extraordinary inducements of _para_ 21, supra, Smadi, intoxicated, and, in the delusional belief that he was somehow exposing the CIA's role in 9-11, agreed to participate in the plot of _para_ 21, supra.

23) After completing  the acts of _para_ 21, supra, Smadi was arrested, and, beaten, by the federal agents involved, who then put out a press release stating that Smadi was part of an al-Qaeda terror cell originating in Afghanistan, and, that they had narrowly averted an al-Qaeda attack.

-8-

24) Shortly after his arrest, Smadi wrote a letter to the Dallas Morn-ing News stating that he was not part of an Afghan terror cell, and, that the entire attack had been staged by the FBI.

25) Shortly after the letter of para 24, supra, was published, the US Attorney's Office decided to offer Smadi a favorable plea to 0 to 30 years;  Smadi was heavily pressured by defense counsel to accept this deal so as to prevent the FBI from being embarassed by an ex-posure of their plot at trial.

26) During the course of Smadi's legal proceeding, his case agent was arrested for attempted murder as part of a love triangle involv-ing the agent's wife, and, the Special Agent in Charge of the FBI's Dallas Field Office.

27) Smadi eventually accepted a plea deal to 24 years, 288 months.

28) The facts of Smadi's case have caused some to question the legiti-macy, and, ethics, of the FBI handing bombs to mentally ill Arab men, and, then, claiming to have stopped "al-Qaeda" attacks, and, these questions have been raised in national publications, and, books like The Terror Factory.

Smadi's Imprisonment
--------------------

29) Smadi was imprisoned at the CMU at the Federal Correctional Center ("FCC") -- Terre Haute in Terre Haute, Indiana from January 2011 to September 2015.

30) Smadi's placement in the CMUs is highly selective, as thousands of BOP inmates qualify for CMU placement, but, under 100 actually re-ceive such placement;  further, Smadi's CMU placement is indefinite

in duration.

31) Smadi was transferred to the USP-Marion CMU in September 2015.

32) One goal of the communications monitoring to which Smadi has been subjected as part of the CMU program has been to prevent Smadi from discussing the circumstances of his arrest; and, the actions of the FBI, with the general public.

33) While housed at CMU-Terre Haute, to make it appear as if the FBI had not framed a mentally ill Arab man for a fake terror plot, the BOP psychology staff marked Smadi's schizophrenia as "resolved", resulting in him being denied medication, and. receiving severe treatment, including housing in the Special Housing Unit ("SHU"), and. causing at least one suicide attempt.

34) While housed in the CMUs at both Terre Haute, and, Marion, Smadi has been subjected to the following atypical conditions of confinement:

   a) visits, other than attorney visits, are "non-contact";

   b) visits must be conducted in English, live-monitored, and, recorded;

   c) written correspondance is subject to copying, and, retention;

   d) written correspondance is subject to arbitrary denials, including as complained of herein;

   e) phone calls are recorded, said recordings are retained, and, phone calls are limited in number to two per week;

   f) additional restrictions may be placed upon communications without notice;

   g) despite policy to the contrary, limited access to educational opportunities, and, institutional programming, including psychological programming;

all such limitations being of indefinite duration.

35) From time to time during his placement at the USP-Marion CMU, and, regardless of the actual facts of his case, Hill has referred to Smadi as a "terrorist", and, a "war criminal".

Smadi's Religious Beliefs
------------------------

36) Since his arrest, Smadi has developed deeply. and. sincerely, held religious beliefs.

37) Smadi is a Sunni Muslim, and, adheres to the Salafi interpretation of Islam.

38) Due to the beliefs of para 37, supra, Smadi is required to eat Halal food. which is food restricted by. and, prepared in accordance with, the Salafi interpretation of Islamic law.

39) A requirement of para 38, supra, is that Smadi eat Halal meat, which is meat prepared in accordance with the Salafi interpretation of Islamic law.

40) Kosher food does not meet the requirements of para 38, supra, as it is prepared in a manner inconsistent with Islamic law, and, contains ingredients, like wine, which are prohibited by Islamic law.

41) Further, the beliefs of para 37-39, supra, require that Smadi not eat food prepared in a container, including a microwave, that has been used to cook pork, and/or, other forbidden ("haram") food, unless said container be ritually purified in a manner not readily available in a prison environment.

-11-

Embassy Mail
------------

42) In December 2016, Smadi asked Burgess for leave to use the institutional legal mail system to mail a letter to the Jordanian ambassador at the Jordanian embassy in Washington, DC, stating that he wanted to discuss sensitive issues, including FBI misconduct in his criminal case, and, BOP misconduct during his imprisonment.

43) Burgess, applying BOP Policy Statement ("PS") 5214.02, and, 28 CFR §504.204(b), refused to allow Smadi to use the institutional legal mail system for the correspondance of para 42, supra.

44) As a result of the acts of para 43, supra, Smadi's legal mail was read, scanned into an electronic format, and, copies of such were retained, by Burgess, Hill, Brown, and/or, others unknown.

45) As a result of the acts of para 43, Smadi was deterred from sending mail to the Jordanian ambassador on the following occassions:
   a) in January 2017, when he wished to write about FBI misconduct in his prosecution;
   b) in March of 2017, when he wished to write about a possible treaty transfer to Jordan in lieu of deportation;
   c) in November 2017, when Smadi wished to write about the possibility of bringing a legal action in Jordan regarding his continuing detention in the United States.

Blog
----

46) Smadi maintains a blog at the website http://prisoninmates.com/-profile/HosamAl-Smadi39482-177 .

47) As Smadi's family resides primarily in Jordan, and, Smadi cannot afford international postage, and/or, phone calls, the blog of para

-12-

46, supra, is a primary means by which Smadi communicates with his family.

48) On December 6, 2017, Smadi sent the blog post attached as Exh A(a) to Prison Inmates Online, the company responsible for maintaining the blog of para 46, supra, by both the BOP TRULINCs system, and, postal mail, after having prepared it using the TRULINCs system.

49) Exh A(a) does not promote violence.

50) Shortly after the attempt of para 48, supra, Smadi was informed that his TRULINCs communication (typically called an "email", though it is not an actual email) had been "rejected" by Brown.

51) On December 13, 2017, Smadi attempted to send the blog post of Exh A(a) by postal mail to attorney Scott Fenstermaker of New York, NY, with a request that Fenstermaker assist Smadi in bringing a civil rights action over Brown's actions of para 50, supra.

52) On December 13, 2017, Hill, and, Burgess, refused to allow Smadi to mail the letter of para 51, supra.

53) On December 14, 2017, True gave Smadi Exh A(b), barring Smadi from sending the postal mail of para 48, supra.

54) After December 14, 2017, and, prior to January 18, 2017, Smadi attempted to mail to Prison Inmates Online two envelopes containing blog post for the blog of para 46, supra; specifically, Smadi attempted to mail Exh B(a), a rewritten version of Exh A(a), and, Exh B(b), a document which he also mailed to the United States District Court for the District of Texas, the original having been released in discovery, and, being an email sent to Smadi by the FBI in the course of the extraordinary inducments of para 21, supra.

-13-

55) On January 18, and, 19, 2018, Smadi received from True Exh B(c), and, B(d), respectively, barring him from mailing the letters of para 54, supra.

Collages
--------

56) While in prison, Smadi often makes collages, of which Exh C(a) is an exemplar.

57) On March 6, 2018, Smadi attempted to send five collages to Prison Inmates Online, including Exh C(a), for posting upon the blog of para 46, supra.

58) Hill, and, Burgess, refused to allow the collages of para 57, supra, to be mailed.

Interview Request
-----------------

59) Prior to February 22, 2018, Smadi was contacted by a Marie-Pier Frigon, who stated that she wished to interview Smadi about his case in order to publish information about Smadi's case on the internet.

60) After receiving the communication of para 45, supra, Smadi submitted for mailing a letter to Frigon.

61) On February 22, 2018, Smadi received Exh D(a) from True stating that he could not communicate with Frigon because she did not have "research privileges"; this was later modified on appeal to be because her (already approved) address "could not be verified".

62) When Hill handed Smadi the notice of para 61, supra, she stated to Smadi that "A decision has been made that because she asked about your case, that the contact will be blocked, and, you are not allowed to communicate with her."

Newspaper Articles
------------------

63) Prior to March 20. 2018, Smadi attempted to mail to Prison Inmates
    Online a copy of the book Muslim-Christian Dialogue, accompanied by
    approximately three dozen newspaper articles taken from the Washing-
    ton Post, Chicago Tribune, and, other national, general  readership,
    newspapers.

64) On March 20, 2018, Smadi received Exh E(a) from True, stating that
    he could not mail out the material of para 63, supra, because said
    material could "recruit and radicalize others, as well as incite
    violence."

65) Smadi also received Exh E(b) from Hill stating that she had confisc-
    ated the material of para 63, supra, as contraband.

CMU Placement
-------------

66) Prior to April 2. 2018, Smadi was notified by S Byram that he was
    being maintained in the USP-Marion CMU as part of a decision made
    by True, and, others unknown, and, that "this may be the result of
    current offense behavior, or, other verified information."

67) Smadi received no hearing, or. process, in regards to the determ-
    ination of para 66, supra.

Halal Food
----------

68) Prior to April 9, 2018, Smadi communicated with Michaelis, and, True,
    notified them of his sincerely held religious beliefs of para 36-41,
    supra, and, the related dietary requirements, and, asked them to make
    a halal meal available to him.

69) Both Michaelis, and, True, stated that kosher meals were available,

-15-

and, that they were not otherwise required to accomodate Smadi's sincerely held religious beliefs.

COUNT ONE:  CONSTITUTIONAL COMMON LAW VIOLATION OF US CONST AMEND I
------------------------------------------------------------------

70) The facts of para 2-69, supra, are hereby incorporated by reference.

71) Burgess violated US Const  Amend I when he applied BOP PS 5214.02, and, 28 CFR §540.20(b), to Smadi's mail to the Jordanian ambassador, denying Smadi access to the institutional legal mail system as described para 42-45, supra.

COUNT TWO:  CONSTITUTIONAL COMMON LAW VIOLATION OF US CONST AMEND I
------------------------------------------------------------------

72) The facts of para 2-69, supra, are hereby incorporated by reference.

73) Brown violated US Const Amend I when he refused to allow Smadi to send out the TRULINCs communication because of its contents as described para 50, supra.

COUNT THREE:  CONSTITUTIONAL COMMON LAW VIOLATION OF US CONST AMEND I
------------------------------------------------------------------

74) The facts of para 2-69, supra, are hereby incorporated by reference.

75) Burgess, Hill, and, True, violated US Const Amend I when they refused to allow Smadi to use the institutional legal mail system to communicate with Fenstermaker as alleged para 51-52, supra.

COUNT FOUR:  CONSTITUTIONAL COMMON LAW VIOLATION OF US CONST AMEND I
------------------------------------------------------------------

76) The facts of para 2-69, supra, are hereby incorporated by reference.

77) True violated US Const Amend I when he refused to allow Smadi to send mail to Prison Inmates Online as alleged para 53-55, supra.

-16-

COUNT FIVE:  CONSTITUTIONAL COMMON LAW VIOLATION OF US CONST AMEND I
-----------------------------------------------------------------

78) The facts of para 2-69, supra, are hereby incorporated by reference.

79) Hill, and, Burgess, violated US Const Amend I when they refused to
    allow Smadi to mail his collages to Prison Inmates Online as alleged
    para 56-58, supra.

COUNT SIX:  CONSTITUTIONAL COMMON LAW VIOLATION OF US CONST AMEND I
-----------------------------------------------------------------

80) The facts of para 2-69, supra, are hereby incorporated by reference.

81) Hill, and, True, violated US Const Amend I when they refused to
    allow Smadi to communicate by mail with Marie-Pier Frigon as
    alleged para 59-62, supra.

COUNT SEVEN:  CONSTITUTIONAL COMMON LAW VIOLATION OF US CONST AMEND I
-----------------------------------------------------------------

82) The facts of para 2-69, supra, are hereby incorporated by reference.

83) Hill, and, True, violated US Const Amend I when the refused to
    allow Smadi to mail Muslim-Christian Dialogue, and, various news-
    paper articles, to Prison Inmates Online as alleged para 63-65,
    supra.

COUNT EIGHT:  CONSTITUTIONAL COMMON LAW VIOLATION OF US CONST AMEND V
-----------------------------------------------------------------

84) The facts of para 2-69, supra, are hereby incorporated by reference.

85) Byram, True, and, others unknown, violated Smadi's US Const Amend V
    right to Due Proces when they continued his placement in the USP-
    Marion CMU without a hearing as described para 66-67, supra.

COUNT NINE:  CONSTITUTIONAL COMMON LAW VIOLATION OF US CONST AMEND I
-----------------------------------------------------------------

86) The facts of para 2-69, supra, are hereby incorporated by reference.

-17-

87) Byram, True, and, others unknown, violated Smadi's US Const Amend I rights when they maintained him in the CMU in retaliation for the acts of speech alleged Counts One To Seven, supra.

COUNT TEN:  CONSTITUTIONAL COMMON LAW VIOLATION OF US CONST AMEND I
------------------------------------------------------------------

88)  The facts of para 2-69, supra, are hereby incorporated by reference.

89) Michaelis, and, True, violated Smadi's US Const Amend I rights when they unreasonably burdened his free exercise of religion by refusing to reasonably accomodate Smadi's need for halal meals, and, to provide Smadi with a separate microwave in which to prepare such meals, as alleged para 68-69, supra.

COUNT ELEVEN:  VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT
------------------------------------------------------------------

90) The facts of para 2-69, supra, are hereby incorporated by reference.

91) Michaelis, and, True, violated the Religious Freedom Restoration Act, 42 USC §2000bb, et seq, when they excessively burdened his religious expression by refusing to provide halal meals and, to provide a separate microwave in which to prepare such meals, as alleged para 68-69, supra.

-18-

V.    REQUEST FOR RELIEF

State exactly what you want this court to do for you.  If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255.  Copies of these forms are available from the clerk's office.

Nominal, compensatory, and, punitive, damages, as well as appropriate injunctive, and, declaratory, relief for each count, as well as any other relief that the Court finds to be appropriate, and, the costs, and, any reasonable attorney fees associated with this action.

VI.   JURY DEMAND (check one box below)

The plaintiff ☒ does  ☐ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on: __December 1, 2018__                  _Hosam Smadi_
                     (date)                                    Signature of Plaintiff

__USP-Marion PO Box 1000__                    __Hosam Maher Smadi__
           Street Address                                      Printed Name

__Marion, IL 62959__                              __# 39482-177__
           City, State, Zip                                Prisoner Register Number

                          _____
                              Signature of Attorney (if any)



9.9

Penitentiary - Cmu
P.O. Box 1000
Marion, IL 62959

<>39482-177<>
Us District Court
750 Missouri AVE
Clerk's Office, Room 104
E Saint Louis, IL 62201
United States

MAIL CLEARED
CRIMINALS

RECEIVED

DEC - 6 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE