IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HOSAM MAHER SMADI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No.: 18-cv-02149-JPG |
| | ) |
| WILLIAM TRUE; T.C. BROWN; GARY BURGESS; KATHY HILL; AND S. BYRAM, | ) ) ) |
| Defendants. | ) |

**PLAINTIFF HOSAM SMADI'S RESPONSE TO DEFENDANTS' BRIEF REGARDING THE DISTRICT COURT'S ORDER OF JANUARY 14, 2020**

COMES NOW Plaintiff, Hosam Smadi, by and through his undersigned counsel, and for his Response to Defendants' Brief in response to the District Court's Order of January 14, 2020 (Doc. 46), states as follows:

**INTRODUCTION**

Plaintiff is currently an inmate at the United States Penitentiary in Marion, Illinois. He is housed in a restricted unit that monitors all outgoing communications. He filed this cause of action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), seeking declaratory judgment, monetary damages, and injunctive relief for violation of his First Amendment rights by the federal prison employees. Plaintiff has an implied cause of action because his First Amendment rights were violated and *Bivens* recognizes an implied damages remedy for violations of constitutional rights by federal employees of a government facility. Additionally, the Supreme Court's ruling in *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017), does not eliminate Plaintiff's implied cause of action because: (1) *Abbasi* is distinguishable, and there is no meaningful difference between the *Bivens*' cases and the case at bar; (2) this Court should not infer that Congress deliberately withheld a remedy for First Amendment violations;

(3) Plaintiff has no other remedy available to provide redress for the harm caused by the violation of his constitutional rights; and (4) no special factors counsel hesitation in extending a *Bivens* remedy to Plaintiff's case.  Therefore, because Plaintiff has an implied cause of action under *Bivens*, damages and injunctive relief are appropriate in this case.

## STATEMENT OF FACTS

On December 6, 2018, Plaintiff filed his Complaint in the District Court (Doc. 1).  The Complaint consisted of seven counts dealing with violations of the First Amendment[1], Fifth Amendment, and the Religious Freedom Restoration Act (Doc. 1).  On February 15, 2019, the District Court dismissed Plaintiff's First Amendment claims with prejudice at screening, pursuant to 28 U.S.C. § 1915A(b)(1), ruling that *Bivens* does not apply to First Amendment claims after *Abbasi* (Doc. 12).

Plaintiff appealed this decision to the Seventh Circuit on February 27, 2019 (Doc. 14). On November 8, 2019, the Seventh Circuit vacated the dismissal of the First Amendment claims and remanded the case for further briefing on the *Bivens* case and the damages and/or remedies available to Plaintiff after *Abbasi* (Doc. 28).  The Seventh Circuit found that additional briefing was needed on the *Bivens* and *Abbasi* cases before a decision could be made regarding the propriety of the dismissal of Plaintiff's claims for failure to state a claim (Doc. 28).  On remand, the District Court issued an Order, dated January 14, 2020, reinstating Plaintiff's First Amendment claims against Defendants and ordering the parties to file briefs addressing the impact of *Abbasi* on Plaintiff's First Amendment claims and his request for damages and injunctive relief (Doc. 29).

---

[1] Only the First Amendment claims are relevant in this appeal so we will not address the other claims in this Response.

Plaintiff contends that Defendants violated his First Amendment rights in the following ways: (1) blocking Plaintiff, a Jordanian citizen, from sending a letter to the Jordanian ambassador in Washington, D.C. regarding the conditions of his imprisonment (Count I); (2) blocking Plaintiff from sending collages, blog posts, newspaper articles, and other materials through the inmates' computer system and by mail (Counts II and IV); prohibiting Plaintiff from sending a letter to a criminal defense attorney seeking legal representation for a civil rights action (Count III); and prohibiting Plaintiff from communicating with a journalist about his case (Count VI). Plaintiff is challenging the constitutionality of Defendants' actions in blocking these communications.

## ARGUMENT

**I.   Plaintiff has an implied cause of action for damages and injunctive relief due to the violation of his First Amendment rights by Defendants under *Bivens*.**

In *Bivens*, the Supreme Court held that a cause of action for money damages could be awarded when a federal officer "acting under color of [federal] authority" violates an individual's constitutional rights. *See Bivens*, 403 U.S. at 389. In that case, Mr. Bivens filed suit after agents of the Federal Bureau of Narcotics entered his residence and arrested him without a warrant or probable cause in violation of the Fourth Amendment. *Id.* As a result of this violation, Mr. Bivens sought monetary damages from each of the federal agents. *Id.* at 390. While neither the Constitution nor a statute provided a federal cause of action and damages remedy in this situation, the Supreme Court stated that "it is well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Id.* at 396 (internal citations omitted).

Additionally, the Court found "no special factors counseling hesitation in the absence of affirmative action by Congress." *Id.*  In analyzing this criteria, the Court stated that they were not asked to rule on a question of "federal fiscal policy" or to impose liability upon a congressional employee for actions contrary to no constitutional prohibition, but merely said to be in excess of the authority delegated to him by Congress." *Id.*  Instead, the Supreme Court stated that the question is merely whether the individual, upon demonstration of an injury due to the violation of his Fourth Amendment rights, is entitled to redress for his injury through a particular remedial mechanism normally available in federal courts." *Id.* at 397.  As a result, the Supreme Court held that Mr. Bivens was entitled to money damages and injunctive relief to vindicate the violation of his personal interests by federal officers, as expressly protected under the Fourth Amendment.  *Bivens*, 403 U.S. at 397; *see also*, *id.* at 400 (Harlan, J., concurring).

In this case, similar to the situation in *Bivens*, Plaintiff is seeking money damages and injunctive relief for the violation of his constitutional rights by the Defendants, who were acting under the authority of federal law at the time of the violations.  "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Id.* at 397, *citing Marbury v. Madison*, 1 Cranch 137, 163 (1803).

Such right is not eliminated by the Supreme Court's holding in *Abbasi* for four reasons.  First, there is no meaningful difference between the *Bivens*' line of cases and the case at bar – all of them deal with the violation of a fundamental constitutional right.  Second, this Court should not infer that Congress deliberately withheld a remedy for First Amendment violations.  Third, there is no other remedy available to provide redress for the harm caused by the violation of Plaintiff's constitutional rights.  Fourth, no special factors counsel hesitation in extending a

*Bivens* remedy to Plaintiff's case. For these reasons, Plaintiff has an implied cause of action under *Bivens*.

      A.      **The Supreme Court's holding in *Abbasi* does not eliminate Plaintiff's implied damages remedy under *Bivens*.**

The *Abbasi* case involved noncitizens who were arrested in the aftermath of September 11, 2011 and detained pursuant to a "hold-until-cleared" policy at a Metropolitan Detention Center. *Abbasi*, 137 S.Ct. at 1852-53. During their detention, the detainees were subjected to harsh and oppressive conditions and physical abuse by MDC employees. *Id.* at 1853. The issue before the Court was the plaintiffs' ability to seek redress against high-ranking officials and the MDC wardens for Fourth and Fifth Amendment violations resulting from policies they had adopted and overseen. *Id.* at 1853-54. The Court ruled that *Bivens* claims could not be brought against the high-ranking officials. *Id.* at 1860-63.

Initially, the Court discussed the cases recognizing and rejecting *Bivens* remedies and the situations in which those applied. Overall, the Court indicated a general reluctance to imply a damages remedy in any situation besides those that had already been addressed in *Bivens*, *Davis*, and *Carlson*. *Id.* at 1854-57. In particular, the Court stated that courts should not create a *Bivens* remedy where there may be reason to believe that Congress did not want to create one. The Court further cautioned that the existence of an "alternative remedial structure" through which the person could vindicate the harm could limit the court's ability to recognize a *Bivens* remedy. *Id.* at 1858.

Next, the Court considered whether the claim involved a "new context," which the Court defined as being "different in a meaningful way from previous *Bivens* cases decided by [the] Court." *Id.* at 1859. The Court provided a non-exhaustive list of examples of "meaningful" differences, which included: defendant officers being of different ranks; different constitutional

claims; generality or specificity of official action; extent of judicial guidance as to how an officer should respond; statutory or other legal mandate under which the officer was operating; and the risk of disruptive intrusion into functioning of legislative or executive branches. *Id.* at 1859-60.

Then, the Court addressed whether any "special factors" counseled hesitation in applying a *Bivens* remedy. *Id.* at 1860-63. The Court stated that several factors counseled against a Bivens claim in this situation, including that the plaintiffs' detention policy claims implicated important government policy making decisions, said policy involved important national security concerns, Congress had been silent on the availability of a damages remedy despite the strong legislative interest in responding to the September 11 attacks, and that plaintiffs could have pursued habeas petitions or other forms of relief. *Id.*

The *Abbasi* opinion suggests that the Court will evaluate *Bivens* claims on a case-by-case basis to determine whether to infer damages for constitutional violations. *See Abbasi*, 137 S.Ct. 1843. The relevant inquiries include whether there are meaningful differences between prior *Bivens* cases and the case at bar, whether Congress has deliberately withheld a remedy, whether an alternative adequate remedy is available, and, if Congress has failed to act, whether special factors counsel hesitation in applying *Bivens*. *See id.* The evaluation of these factors in the present case show that *Bivens* should be applied.

       **1.**    ***Abbasi* is distinguishable, and there are no meaningful differences between the cases where a *Bivens* remedy has been implied and the case at bar.**

In *Abbasi*, the plaintiffs were seeking recourse for harsh pretrial conditions based on a punitive purpose, race, religion, and other grounds; punitive strip searches; and for the officers knowingly participating in abuse. *Id.* at 1853-54. They were specifically suing regarding the constitutionality of the prison policies that were adopted and overseen by the federal officials.

*See id.*  These policies were put into place after September 11, and the Court expressed hesitation in challenging governmental policies because it didn't want to overstep its bounds.  *See id.* at 1860-63.  This is different than the case-at-bar, where Plaintiff is challenging the actions of the officers by acting outside of the bounds of the policy and not the policy itself.

The Supreme Court has applied *Bivens* in two other scenarios.  The first was *Davis v. Passman*, 442 U.S. 228 (1979) and the second was *Carlson v. Green*, 446 U.S. 14 (1980).  In *Davis*, the plaintiff brought a suit alleging that a U.S. Congressman's actions, by firing her because it was essential that the understudy to his assistant be a man, were discrimination and a violation of her constitutional rights under the Fifth Amendment.  *Id.* at 230-31.  In *Carlson*, the Supreme Court recognized a *Bivens* remedy where prison officials failed to provide an inmate with proper medical care in violation of his Eighth Amendment rights.  *Id.* at 16-18.  Once again, the plaintiffs in these case were challenging the individual's actions in contradiction to a known a constitutional right and not any type of policy.

While the claims themselves in *Bivens*, *Davis*, and *Carlson* might involve different constitutional rights, they all involve individuals challenging the violation of a fundamental right.  This is different from *Abbasi*, where the challenge was to a governmental policy itself and not the actions of an individual that violated a known, fundamental right.

Defendants rely on *Reichle v. Howards*, 566 U.S. 658 and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) to argue that a *Bivens* remedy has never been held to apply to First Amendment claims.  However, the *Ashcroft* case did not determine whether the First Amendment free exercise claim was actionable under *Bivens*.  *Id.* at 675.  Additionally, another case cited in *Reichle* for the same proposition, *Bush v. Lucas*, 462 U.S. 367 (1983), refused to extend *Bivens* to a First Amendment claim to a free speech claim.  However, similar to *Abbasi*, the plaintiff's claim in the *Bush* case

arose out of an employment relationship that was governed by comprehensive procedural and substantive procedures and there were other meaningful remedies governed by these statutes. *Id.* at 368. Once again, these are different than the present situation.

In this case, similar to the other *Bivens* cases, Plaintiff is challenging the Defendants' actions in prohibiting his outgoing mail in contradiction to his constitutional rights and outside of their authority. Prisoners have a First Amendment right to send and receive mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). While prisons can regulate and inspect outgoing prisoner mail, the regulations need to further an "important or substantial governmental interest unrelated to the suppression of expression." *Procunier v. Martinez*, 416 U.S. 396, 413 (1974). It is difficult to imagine how collages of cats, correspondence with a government official, a letter responding to an interview request from a reporter, and a letter to an attorney can be a threat on safety and security or an invocation of violence. As such, Plaintiff contends that Defendants abused their authority and acted outside the bounds of the prison policy in suppressing his constitutional right to send outgoing mail. There is no meaningful difference between seeking redress for this constitutional right versus the other constitutional rights in *Bivens*, *Carlson*, and *Davis*. In the alternative, even if this Court disagrees, it must still evaluate whether Congress deliberately chose to withhold a remedy.

      **2.**    **This Court should not infer that Congress deliberately chose to withhold a remedy with respect to constitutional violations.**

Congress has taken steps to preserve and ratify the *Bivens* remedy with amendments to the Federal Tort Claims Act ("FTCA") that took effect in 1974 and 1988. In 1974, when responding to the concerns of the adequacy of a *Bivens* remedy, Congress expanded the rights of individuals to sue the government itself for certain law enforcement torts. *See* Act of Mar. 16, 1974, Pub. L. No. 93-253, 88 Stat. 50 (amending FTCA to allow suits for false imprisonment,

abuse of process, malicious prosecution, assault, and battery); *see also*, S. 2558, 93d Cong. (1973) (authorizing individuals to sue the federal government for intentional torts committed by law enforcement officers, including actions arising "under the Constitution or statutes of the United States"). These amendments were created to supplement, not displace, a *Bivens* action. "[T]his provision should be viewed as a counterpart to the *Bivens* case and its progeny [sic], in that it waives the defense of sovereign immunity so as to make the Government independently liable in damages for the same type of conduct that is alleged to have occurred in *Bivens* (and for which that case imposes liability upon the individual government officials involved)." *See* S. Rep. No. 93-588, at 3 (1973), *reprinted in* 1974 U.S.C.C.A.N. 2789, 2791.

Additionally, Congress took a second step to further solidify the *Bivens* remedy with the Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act of 1988 ("the Act"). The Act amended the FTCA to make it the exclusive remedy for torts committed by federal employees within the scope of their employment. Specifically, the Act precludes any common law tort actions against the federal government for injury, loss of property, personal death, or injury from the wrongful act of a government employee within the scope of his employment. *See* 28 U.S.C. § 2679(b)(1) (2006). However, the Act expressly states that it does not extend or apply to civil actions against a government employee that is brought for a violation of the Constitution of the United States. *See id.* at (b)(2). Under the Act, a federal employee may still be sued for violating the Constitution of the United States or for violating a federal statute that authorizes suit against an individual. *Id.*

The Constitution speaks with a majestic simplicity and does not "partake of the prolixity of a legal code." *See McCulloch v. Maryland*, 17 U.S. 316, 407 (1819). One of its important

duties is the designation of rights.  *See id.*  When James Madison presented the Bill of Rights to Congress, he stated:

> If [these rights] are incorporated into the Constitution, independent tribunals of justice will consider themselves in a peculiar manner the guardians of those rights; they will be an impenetrable bulwark against every assumption of power in the Legislative or Executive; they will be naturally led to resist every encroachment upon rights expressly stipulated for the Constitution by the declaration of rights.

1 Annals of Cong. 439 (1789).  It is presumed that constitutional rights are to be enforced through the courts.  *Davis*, 442 U.S. at 242.

A special factors analysis for a *Bivens* remedy is only relevant in the absence of Congressional action.  *See Abbasi*, 137 S.Ct. at 1857.  By accepting *Bivens* and making it the exclusive way to defend constitutional rights, Congress has joined the Court in recognizing the importance of *Bivens* in holding federal actors accountable.

### 3. Plaintiff has no other adequate remedy available to provide redress for the harm from the violation of his constitutional rights.

A state employee who violates an individual's constitutional rights may be subject to liability under both state tort law and under 42 U.S.C. § 1983.  A federal official who commits a similar action is not subject to liability under state tort law, due to the Act, and there is no similar statute to § 1983 that makes federal officials liable for violating an individual's constitutional rights.  In *Bivens* and subsequent cases, the Supreme Court has filled in that gap and concluded that such a statute is not necessary for an injured person to recover damages from a federal official that commits a constitutional tort.

Congress has presumed the availability of suits against federal officials for constitutional remedies and has foreclosed all alternative remedies.  In enacting the Act, Congress eliminated

state common law actions and preserved judicial review of constitutional tort claims through the vehicle of a *Bivens* action.

Additionally, Plaintiff has no legitimate remedy with the Federal Bureau of Prisons (hereinafter "BOP"). He has exhausted all of his appeals with the BOP regarding Defendants' censorship of his mail and all of his appeals have been denied.

As such, *Bivens* supplies the only generally available basis on which an individual can seek an award of damages for federal violations of a constitutional right. In 1971, it was "damages or nothing" for Mr. Bivens, as explained by Justice Harlan in his concurring opinion. *See Bivens*, 403 U.S. at 410. Today, it has become *Bivens* or nothing for those who seek justice for the violation of their constitutional rights, such as Plaintiff in this case.

### 4. No special factors counsel hesitation in extending a *Bivens* remedy to the case at bar.

Even assuming the absence of Congressional action, which Plaintiff denies, there are no special factors that counsel hesitation in extending a *Bivens* remedy to this case. In *Abbasi*, the Supreme Court reasoned that several special factors counseled against recognizing the plaintiffs' *Bivens* claims, including that the detention policy claims implicated important governmental policy-making decisions, the policy involved national security concerns, and that the plaintiffs had other forms of relief. *See id.* at 1860-63.

The first two special factors in *Abbasi* deal with the plaintiffs' challenges to the constitutionality of a governmental policy, which as stated previously, is not the issue in this case. Additionally, there is no financial burden on federal agencies in the *Bivens*' line of cases because they are not asking the Court to create laws or overrule governmental policies. Instead, those cases stand for the idea that the Court can remedy harms caused by the violation of an individual's constitutional rights. Defendants are already reviewing Plaintiff's mail so there is

no additional burden in making sure they do not abuse the policy and violate constitutional rights in the process.

The *Bivens* cases found that no special factors counseled hesitation in implying a violation of an individual's constitutional rights by a federal actor. Because *Abbasi* involves issues different than those in this case, the Court should apply *Bivens* and find that no special factors counsel hesitation for implying a remedy.

> B.  **Damages are an appropriate remedy for the violation of Plaintiff's First Amendment rights under *Bivens*.**

A *Bivens* action provides victims with a remedy for injuries they suffered by enabling them to recover damages from individual federal officers for their constitutional violations. *See id.* The purpose of a *Bivens* action is to deter an officer from misconduct. *See Abbasi*, 137 S.Ct. at 1860. "[T]he decision in Bivens established that a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). In this case, as a result of the violations of Plaintiff's First Amendment rights, and to deter future misconduct, Plaintiff is entitled to nominal and punitive damages.

> 1.  **Nominal Damages**

In the absence of an actual injury, nominal damage awards for constitutional violations are appropriate. *See Trevino v. Gates*, 99 F.3d 911, 921 (9th Cir. 1996) (internal citations omitted). Nominal damages "are not compensation for loss or injury, but rather recognition of a violation of rights." *Redding v. Fairman*, 717 F.2d 1105, 1119 (7th Cir. 1983). Nominal damages must be awarded if the plaintiff proves that his or her constitutional rights have been violated. *See Carey v. Piphus*, 435 U.S. 247, 266-67 (1978); *Six Star Holdings, LLC v. City of*

*Milwaukee*, 821 F.3d 795,805 (7th Cir. 2016); *Cummings v. Connell*, 402 F.3d 936, 942-46 (9th Cir. 2005); *Trevino*, 99 F.3d at 922. Here, Plaintiff was improperly restricted from communicating with an ambassador from Jordan, an attorney, a reporter, and other outside contacts. As stated previously, it is difficult to imagine how collages of cats, correspondence with a government official, a conversation with a reporter, and a letter to an attorney can be a threat on safety and security or an invocation of violence. Defendants' restrictions on these communications were an abuse of their authority. Therefore, because Plaintiff's First Amendment rights were violated, nominal damages are appropriate.

**2.     Punitive Damages**

The purpose of punitive damages is to punish and deter reprehensible conduct. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 n. 9 (1986). These damages may be awarded under a showing of "evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). While prisons can regulate and inspect outgoing prisoner mail, the restrictions cannot be so broad as to restrict every outside communication a prisoner requests. See *Martinez*, 416 U.S. at 413. Prisoners have a First Amendment right to send and receive mail and that right cannot be restricted simply because a prison disagrees or does not like what the prisoner says in the communication. *See Paff*, 52 F.3d at 265. Plaintiff has tried to communicate with an ambassador from Jordan, an attorney, a reporter, and has tried to post collages of cats and other images to a blog. Due to the indifference to Plaintiff's federally protected rights, Plaintiff is also entitled to punitive damages in this case to defer future violations of his First Amendment rights.

### C. Alternatively, injunctive and declaratory relief is also an appropriate remedy for a violation of constitutional rights under *Bivens*.

"The power of the federal courts to grant equitable relief for constitutional violations has long been established." *Mitchum v. Hurt*, 73 F.3d 30, 35 (3d Cir. 1995) (overruled on other grounds). There is a "presumed availability of federal equitable relief against threatened invasions of constitutional interests." *Bivens*, 403 U.S. at 404 (Harlan, J., concurring); *see also*, *Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274, 283-84 (1977). The courts' authority to impose equitable remedies is broader than its power to impose legal remedies against individuals. *See Mitchum*, 73 F.3d at 35. The courts' power to enjoin unconstitutional acts by the government is inherent in the Constitution itself. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137. The purpose of an injunction is to protect rights safeguarded by the Constitution and to prevent individual government officers from doing what is forbidden by those rights. *See Davis*, 442 U.S. at 242.

In this case, Plaintiff seeks injunctive relief to prevent Defendants from future violations of his First Amendment rights. Specifically, Plaintiff is requesting that the Court hold that Defendants may not exercise discretionary judgment in blocking Plaintiff's communications but must follow the precedent and guidelines as established by the Supreme Court. Plaintiff's relief is sought against Defendants in their individual capacities for applying a blanket exclusion against all of Plaintiff's communications, including those which are innocuous, in violation of Federal law. Such claims are not prevented. *See Bunn v. Conley*, 309 F.3d at 1009-10 (7th Cir. 2002). Plaintiff also seeks declaratory relief and requests that this Court find that such blanket restrictions are a violation of Plaintiff's First Amendment rights.

## **CONCLUSION**

In summary, Plaintiff has an implied cause of action because his First Amendment rights were violated and *Bivens* recognizes an implied damages remedy for violations of constitutional rights by federal employees of a government facility. Additionally, the Supreme Court's ruling in *Abbasi* does not eliminate Plaintiff's implied cause of action because: (1) *Abbasi* is distinguishable, and there is no meaningful difference between the *Bivens*' cases and the case at bar; (2) this Court should not infer that Congress deliberately withheld a remedy for constitutional violations; (3) Plaintiff has no other remedy available to provide redress for the harm caused by the violation of his constitutional rights; and (4) no special factors counsel hesitation in extending a *Bivens* remedy to Plaintiff's case. Therefore, because Plaintiff has an implied cause of action under *Bivens*, damages and injunctive relief are appropriate in this case.

WHEREFORE, Plaintiff Hosam Smadi prays that this Court find that he has properly stated a claim for relief under *Bivens* and *Abbasi* and allow his claims to proceed in this Court. Plaintiff also requests that this Court award such other and further relief as it deems just and appropriate.

        Respectfully submitted,

        **FOLEY & MANSFIELD, P.L.L.P.**

By:      */s/ Haley M. Combs*
        Nicholas B. Bunnell, #6291433
        nbunnell@foleymansfield.com
        10740 Nall Avenue
        Suite 242
        Overland Park, Kansas 66211
        Telephone: (913) 232-8800

        and

        Haley M. Combs, #6301980
        hcombs@foleymansfield.com
        101 South Hanley Road
        Suite 600
        St. Louis, Missouri 63105
        (314) 925-5700
        (314) 925-5701 (Fax)

        **Attorneys for Plaintiff**
        **Hosam Smadi**

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2020, I electronically filed *Plaintiff's Response to Defendants' Brief Regarding the District Court's Order of January 14, 2020* with the Clerk of the Court using the ECF, who in turn sent notice to all parties.

        */s/ Haley M. Combs*