# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HOSAM MAHER SMADI, #39482-177, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 18-cv-02149-JPG |
| WILLIAM TRUE,<br>T. C. BROWN,<br>GARY BURGESS,<br>KATHY HILL,<br>S. BYRAM, and<br>J. MICHAELIS, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Now before the Court for consideration is the question of whether *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), provides Plaintiff Hosam Smadi with a vehicle for bringing First Amendment claims of mail interference and retaliation against federal officials in light of the United States Supreme Court's decision in *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017). This Court previously dismissed Smadi's Complaint at screening pursuant to 28 U.S.C. § 1915A, and he appealed. The Seventh Circuit reversed only that portion of the screening order dismissing the First Amendment claims with instructions to obtain additional counseled briefing on the issue of which First Amendment claims for damages, if any, may proceed after *Abbasi* and under what authority an alternative remedy, such as injunctive relief, is available. *See Smadi v. True, et al.*, 783 F. App'x 633 (7th Cir. 2019). This Court reinstated the First Amendment claims, recruited counsel to represent Smadi, and ordered adversarial briefing on these issues. (Doc. 28). All briefing is now complete. (*See* Docs. 46 and 53).

1

## BACKGROUND

Smadi brought this action pursuant *Bivens* for alleged violations of his constitutional rights by prison officials who interfered with his outgoing mail between 2016 and 2018, while he was in the custody of the Federal Bureau of Prisons (BOP) and housed at the United States Penitentiary in Marion, Illinois (USP-Marion). At the time, Smadi was trying to publicize his belief that he was coerced into pleading guilty to an attempted act of terrorism. Prison officials allegedly thwarted his efforts to mail a letter seeking representation in bringing a civil rights action to an attorney, a letter regarding FBI and BOP misconduct to the Jordanian ambassador, and blog posts/collages/newspaper articles to a journalist. Officials also kept him in an area of the prison that restricted his communications—the communications management unit (CMU)—without a hearing and in retaliation for trying to make these contacts. Smadi brought claims against these officials in their individual capacities for mail interference, denial of due process, and retaliation. He sought declaratory judgment, money damages, and injunctive relief.

After reviewing this matter pursuant to 28 U.S.C. § 1915A and severing an unrelated religious meal claim (Count 7), this Court dismissed all other claims (Counts 1-6) as unauthorized expansions of the implied damages remedy in *Bivens* following the Supreme Court's decision in *Abbasi*. (Doc. 12). This Court concluded that the implied damages remedy recognized for the first time under the Fourth Amendment in *Bivens* does not extend to Smadi's First Amendment claims (Counts 1-4, 6) and Fifth Amendment claim (Count 5) for money damages in light of the *Abbasi* decision. (*Id*.). The Court rejected Smadi's related request for injunctive relief and dismissed the Complaint with prejudice. (*Id*.).

On appeal, the Seventh Circuit affirmed all aspects of this Court's decision, except its dismissal of the First Amendment claims, which are listed below:

**COUNT 1:** Defendants Burgess, Hill, and True violated Smadi's rights under the First Amendment when they refused to let him send legal mail to the Jordanian ambassador and attorney Scott Fenstermaker.

**COUNT 2:** Defendant Brown violated Smadi's rights under the First Amendment when he refused to let him use the TRULINC email system to send blog posts to *Prison Inmates Online*.

**COUNT 3:** Defendants Burgess, Hill, and True violated Smadi's rights under the First Amendment when they refused to let him send blog posts, collages, and news articles to *Prison Inmates Online*.

**COUNT 4:** Defendants Hill and True violated Smadi's rights under the First Amendment when they refused to let him communicate by mail with Marie Pier Frigon.

**COUNT 6:** Defendants Byram and True retaliated against Smadi in violation of the First Amendment by keeping Smadi in the CMU in retaliation for sending regular and legal mail.

The Seventh Circuit held that these claims could not be fully evaluated on the record before the Court at the time. *Smadi v. True, et al.*, 783 F. App'x 633 (7th Cir. 2019). Although recognizing that courts of appeals have held that a *Bivens*-type damages remedy for First Amendment claims is foreclosed post-*Abbasi*, the Seventh Circuit noted that these courts have typically reached this conclusion only after receiving counseled briefing on the issue. *Id*. (citing *Effex Capital, LLC v. National Futures Association*, 933 F.3d 882, 885 (7th Cir. 2019); *Doe v. Meron*, 929 F.3d 153, 167-70 (4th Cir. 2019); *Cantu v. Moody*, 933 F.3d 414, 421-24 (5th Cir. 2019); *Farah v. Weyker*, 926 F.3d 492, 498-500 (8th Cir. 2019); *Vega v. United States*, 881 F.3d 1146 (9th Cir. 2018)). Therefore, this case was remanded for adversarial briefing on the First Amendment claims. Specifically, counsel was instructed to consider which damages claims Smadi may pursue, if any, and whether he may pursue an alternative remedy, such as injunctive relief, under *Bivens* or any other authority. *Id*.

## ANALYSIS

**A.    Standard of Review**

The Seventh Circuit did not explicitly state whether Smadi's First Amendment claims should be reviewed again pursuant to 28 U.S.C. § 1915A, prior to service of this suit on the defendants, or in response to a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) or some other authority, following service of this suit on the defendants.  Similar legal standards apply to screening under Section 1915A and motions to dismiss under Rule 12(b)(6).  Section 1915A requires the Court to screen prisoner complaints and dismiss any portion that fails to state a claim for relief, is legally frivolous or malicious, or asks for money damages from a defendant who is immune from such relief.  28 U.S.C. § 1915A(a)-(b).  Rule 12(b)(6) provides for dismissal of a complaint, or any portion of it, for failure to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  To survive review under both standards, a complaint must include sufficient facts to state a claim for relief that is plausible on its face and must also state sufficient facts to raise the right to relief above the speculative level.  *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Bissessur*, 581 F.3d at 603.  When reviewing a complaint through both lenses, the Court must construe the allegations liberally in favor of the *pro se* plaintiff.[1]  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

---

[1] Although currently represented by counsel, Plaintiff was unrepresented when he filed the Complaint.

### B. *Bivens* and *Abbasi*

Smadi brings his First Amendment claims pursuant to the theory recognized in *Bivens v. Six Unknown Fed'l Narcotics Agents*, 403 U.S. 388 (1971). *Bivens* "authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers." *King v. Fed'l Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005). But *Bivens* and Section 1983 are certainly not the same.

When enacting Section 1983, Congress explicitly authorized courts to award money damages for constitutional deprivations caused by officials acting under color of state law, but Congress did not enact analogous authority to award damages for constitutional violations caused by officials acting under color of federal authority. *Abbasi*, 137 S.Ct. at 1854. In *Bivens*, the Supreme Court instead recognized an *implied* damages action to compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *Bivens*, 403 U.S. 388 (1971). In the fifty years since this decision, the Supreme Court has acknowledged only two other instances in which an implied damages remedy is available for a constitutional deprivation. In *Davis v. Passman*, the Court recognized this implied authority to award damages for a Fifth Amendment claim based on sex discrimination. 442 U.S. 228 (1979). In *Carlson v. Green*, the Court extended the authority to an Eighth Amendment claim based on the denial of medical care for a serious medical condition. 446 U.S. 14 (1980). In *Abbasi*, the Supreme Court pointed out that "these three cases—*Bivens, Davis,* and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S.Ct. at 1855.

Further expansion of the *Bivens* remedy has become a "disfavored judicial activity." *Abbasi*, 137 S.Ct. at 1857. When considering extending this implied damages remedy, the Court

5

has consistently cited various "special factors counselling hesitation" in doing so and identified alternative remedies available to address the injuries alleged by plaintiffs. *Id*. at 1857 (collecting cases). Absent "special factors" that counsel otherwise, the *Abbasi* court made clear that federal courts should not recognize an implied damages remedy in a new context. *Id*.

A two-part test is now used to determine whether a *Bivens*-type damages remedy exists outside of those three limited contexts cited above. First, a court must ask whether the claim represents an extension of one of the three previously recognized claims, such that it presents a new context. *Abbasi*, 137 S. Ct. at 1857-58. If so, the court must then determine whether special factors counsel hesitation in granting the extension absent affirmative action by Congress. *Id*.

**C.     Do Smadi's First Amendment Claims Present a New *Bivens* Context?**

The initial question presented here is whether Smadi's First Amendment claims for mail interference and retaliation present a new *Bivens* context in the wake of *Abbasi*. A claim presents a new *Bivens* context where it differs in a meaningful way from an earlier *Bivens* case decided by the Court. *Abbasi*, 137 S.Ct. at 1859-60. When analyzing this issue, courts consider the constitutional right at issue, the rank of the officers involved, the generality or specificity of the official action, the extent of judicial guidance for the official conduct, the statutory or other legal mandate under which the officer was operating, and the risk of disruptive intrusion by the Judiciary into the functioning of other government branches, among other things. *Id*.

The first consideration persuades this Court that Smadi's claims present a new *Bivens* context. His claims share nothing in common with those Supreme Court cases previously recognizing an implied damages remedy under the Constitution (*i.e.*, *Bivens, Davis*, and *Carlson*). Smadi's claims arise under the First Amendment, whereas *Bivens*, *Davis*, and *Carlson* arise under the Fourth, Fifth, and Eighth Amendments, respectively. The right at issue in each of these cases

6

is also different. *Abbasi*, 137 S.Ct. at 1859-60. Smadi's case implicates the right to send and receive mail and the freedom of speech. In contrast, *Bivens* primarily implicated the right to privacy and tested the constitutionality of a home entry, arrest, and search without a warrant under the Fourth Amendment. *Bivens*, 403 U.S. at 389-90. *Davis* involved the right to be free from gender discrimination and implicated the equal protection component of the Fifth Amendment Due Process Clause. *Davis*, 442 U.S. at 247-49. Finally, *Carlson* involved a prisoner's access to medical care and tested the constitutionality of denying care under the Eighth Amendment. Smadi's First Amendment claims present a new context.

**D.     Do Special Factors Counsel Hesitation in Extending the *Bivens* Remedy?**

Whether special factors urge expansion of this remedy into a new context depends on "whether the Judiciary is well-suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed," and whether "there is an alternative remedial structure present in a certain case." *Abbasi*, 137 S.Ct. at 1858. When considering these special factors, the Court finds that they weigh against further expansion of the *Bivens* remedy into this new context.

1.     <u>Who Is Best Suited to Decide Whether to Allow a Damages Action?</u>

Congress, not the courts, is best situated to decide whether a damages remedy should be available for the First Amendment claims presented here. The Court is not well-suited to weigh the costs and benefits of a damages remedy in this particular context. Smadi's claims arise from restrictions placed on his outgoing mail and inmate communications. These claims involve challenges to the prison's mail policies and CMU protocol and/or application of these policies to Smadi. (*See, e.g.,* Doc. 1, ¶¶ 43, 71) (challenging application of BOP Program Statement 5214.02 and 28 C.F.R. §§ 540.20, 504.204). To the extent he challenges the policies themselves, the

Supreme Court has made clear that *Bivens* is "not a proper vehicle for altering an entity's policy." *Abbasi*, 137 S.Ct. at 1849 (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001)). To the extent he focuses on each BOP official's conduct in carrying out these policies, the Court finds that these claims could still call into question the formulation and implementation of the BOP's mail and CMU policies. The Court's inquiry into these policies may, in turn, interfere with the Executive Branch, which operates the BOP.

The expansion of this implied damages remedy to include First Amendment claims will also interfere with the execution of official action. Prison administrators are in the best position to make decisions regarding matters of institutional security, and this includes restrictions placed on inmate communications. Courts generally stay out of such matters. *See Bell v. Wolfish*, 441 U.S. 520, at 547-48 (1979). Prison officials concerned with personal liability for constitutional deprivations are less capable of making the discretionary decisions that are frequently demanded of them when dealing with the inmate population for fear of becoming embroiled in extended litigation over claims of retaliation, which can be easily fabricated. *See, e.g., Sargeant v. Barfield*, No. 19-cv-50187, 2021 WL 2473805, at *3 (N.D. Ill. June 17, 2021) (citing *Earle v. Shreves*, 990 F.3d 774, 780-81 (4th Cir. 2021); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 532-33 (6th Cir. 2020); *Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018)). Litigation over these issues could prevent individual defendants from properly and expeditiously carrying out their duties for fear of personal liability.

Moreover, legislative action on the part of Congress suggests that it does not want to recognize a damages remedy in this context. *See Abbasi*, 137 S.Ct. at 1865 ("Legislative action suggesting that Congress does not want a damages remedy is itself a factor counselling hesitation."). This Court notes at least three examples. First, Congress' enactment of the Prison

Litigation Reform Act (PLRA) suggests that it already considered and rejected further expansion of the *Bivens* remedy. The PLRA was enacted after the Supreme Court's decisions in *Bivens*, *Passman*, and *Carlson* and significantly limits the manner in which prisoner abuse claims can be brought in federal court. *See Decker v. Bradley*, No. 19-cv-616-JRS-MJD, 2021 WL 1531178, at *2 (S.D. Ind. April 18, 2021); *Fulks v. Watson*, No. 19-cv-501-JPH-MJD, 2021 WL 1225922, at *6 (S.D. Ind. March 31, 2021). It restricts prison litigation by: (a) requiring exhaustion of available administrative remedies before bringing suit; (b) permitting *sua sponte* dismissal of suits that are frivolous, malicious, fail to state a claim, or seek money damages from an individual who is immune from such relief; and (c) permitting suits seeking compensation for mental or emotional injury suffered while in custody only upon a "prior showing of physical injury or the commission of a sexual act." *Id.*; 42 U.S.C. §§ 1997e(a), (c), & (e). Second, Congress' enactment of the *in forma pauperis* statute similarly limits prisoner litigation by preventing an inmate from bringing suit or an appeal "unless the prisoner is under imminent danger of serious physical injury" if that inmate has had three or more cases or appeals dismissed as being frivolous, malicious, or for failure to state a claim for relief. 28 U.S.C. § 1915(g). Third, there would be incongruity between the rights of federal employees, who have no First Amendment retaliation claims under *Bivens*, and federal prisoners, who would. *See Sargeant*, 2021 WL 2473805, at *3 (citing *Callahan*, 912 F.3d at 523). Congress' legislation in the field of prisoner litigation and beyond since the Supreme Court decided *Bivens*, *Passman*, and *Carlson* cautions against further expansion of the implied damages remedy into this new context.

Moreover, the financial burden on federal agencies associated with increased litigation counsels hesitation in expansion of the *Bivens* remedy. Congress recognized this when it implemented the PLRA with the express purpose of reducing costs related to frivolous suits filed

9

by prisoners. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). When deciding whether special factors weigh against expansion of this implied damages remedy into the First Amendment context, this Court must balance the costs of defending such claims against the need for damages as a remedy to protect prisoners' rights. The balancing of these policy concerns is best left to the legislative branch. *See Abbasi*, 137 S.Ct. at 1857.

2. Alternative Remedies

Alternative remedies are available. The Supreme Court has explained that the existence of an alternative remedial structure, alone, may limit the court's power to infer a new *Bivens* cause of action because "the alternative process may convincingly caution the Judiciary against 'providing a new and freestanding remedy in damages.'" *Abbasi*, 137 S.Ct. at 1858. An alternative remedy need not be a superior one. As a general rule, when other forms of relief are available, the *Bivens* remedy generally is not. *Id.* at 1863. In this particular case, there are other administrative, statutory, and equitable remedies available.

Smadi can (and did) use the BOP's Administrative Remedies Process. This process "applies to all inmates in institutions operated by the Bureau of Prisons" and "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." *See* 28 C.F.R. § 542.10(a)-(b). An institution's warden is charged with the task of "[e]stablish[ing] procedures" to address grievances and appeals and to investigate and respond to them. 28 C.F.R. § 542.11(a)(1). Smadi refers to the process in the Complaint. (Doc. 1, p. 5) (stating he "exhausted all available remed[ies] through BP-11 for each claim"). He also provided copies of grievance responses he received. (*Id.* at 6-14). Smadi had an alternative remedy process available to him and used it. The fact that he did not obtain the exact relief he sought does not justify expansion of the implied damages remedy into this new context.

Smadi may also be able to obtain declaratory or injunctive relief. Smadi could bring an official capacity claim for declaratory judgment or injunctive relief against the BOP. *See Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (allowing equitable action for declaratory judgment and injunctive relief to proceed against federal agency). He may also pursue this relief against a high-ranking official in his or her official capacity—making it a claim against the federal agency. *See White v. Sloop*, 772 F. App'x 334, 336 (7th Cir. 2019) (citing *King*, 415 F.3d at 636). In fact, Smadi mentioned a "*Marbury*" claim in the Complaint, and this may be what he intended. *See id*. However, the claim for declaratory and/or injunctive relief falls short because Smadi neglected to name the agency at all or a high-ranking official in an official capacity.

The more appropriate avenue to relief may be found in the Administrative Procedures Act, 5 U.S.C. § 701, *et seq*. The APA provides parties who are adversely impacted by agency action with a means of seeking judicial review of the action under certain circumstances. *See* 5 U.S.C. §§ 701(a), 702. There is a strong presumption that agency action is reviewable. *Mach Mining, LLC v. EEOC*, 135 S.Ct. 1645, 1651 (2015) ("Congress rarely intends to prevent courts from enforcing its directives to federal agencies" and so there is a "strong presumption favoring judicial review of administrative action." (citation omitted)). The BOP is considered an "agency," and its actions are presumptively amenable to APA review. *See* 5 U.S.C. § 701(b)(1) (an agency is "each authority of the Government of the United States"); *White v. True*, 833 F. App'x 15 (7th Cir. 2020) (assuming federal court may review under APA a claim that the BOP arbitrarily applied its mail policy to inmate). "[W]here a statute like the APA provides a mechanism for seeking relief, a plaintiff cannot invoke *Bivens*." *Id*. (citing *Hammer v. Ashcroft*, 570 F.3d 798, 803 (7th Cir. 2009) (en banc)).

The existence of these alternative remedies weighs against expanding the implied damages remedy into this next context. Although these alternative remedies may offer incomplete or less desirable relief, this does not warrant expansion of the *Bivens* remedy. After all, the Supreme Court has limited expansion of the *Bivens* remedy where no other remedy was available for four decades. In *Malesko*, the Supreme Court "rejected the claim that a *Bivens* remedy should be implied simply for want of any other means for challenging a constitutional deprivation in federal court" and held that as "long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability." *Malesko*, 534 U.S. at 69. Alternative remedies "need not be perfectly congruent" to preclude a *Bivens* remedy. *Minneci v. Pollard*, 556 U.S. 118, 129 (2012). Where Congress has created "an alternative remedial structure to protect a constitutional right, the Supreme Court has strongly cautioned that the courts should not create a secondary remedy." *Goree v. Serio*, 735 F. App'x 894, 895 (7th Cir. 2018). *See also Grady v. Kinder*, 2020 WL 630140, at *2 (7th Cir. 2020) (*Abbasi* states the "existence of alternative remedial structure weighs against expansion of *Bivens*"). The availability of alternative remedies weighs against further expansion of an implied damages remedy for Smadi's First Amendment claims.

**E.     Does the Weight of Authority Counsel Hesitation in Expanding the *Bivens* Remedy?**

The overwhelming weight of authority counsels hesitation in expansion of the *Bivens* remedy into the First Amendment context post-*Abbasi*. The Supreme Court has never held that the *Bivens*-type remedy extends to First Amendment claims. *See Abbasi*, 137 S.Ct. at 1857; *Reichle v. Howards*, 566 U.S. 658, 663 n. 4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) ("Indeed, we have declined to extend *Bivens* to a claim sounding in the First Amendment."). Courts of appeals are in

12

agreement that *Bivens* does not encompass First Amendment claims post-*Abbasi*. *See, e.g., Bistrian v. Levi*, 912 F.3d at 96 (3d Cir. 2018); *Earle v. Shreves*, 990 F.3d at 776 (4th Cir. 2021); *Butler v. Porter*, 999 F.3d 287, 294 (5th Cir. 2021); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d at 525 (6th Cir. 2020); *Johnson v. Burden*, 781 F. App'x 833, 836 (11th Cir. 2019) (holding that First Amendment retaliation claims are an extension of *Bivens*). District courts nationwide have shown the same strong trend by finding that *Bivens* does not extend to claims arising under the First Amendment. *See Akande v. Phillips*, No. 17-cv-01243-EAW, 2018 WL 3425009, at *8 (W.D.N.Y. July 11, 2018) (collecting cases and noting that "[n]ationwide, district courts seem to be in agreement that, post-*Abbasi*, prisoners have no right to bring a *Bivens* action for violation of the First Amendment") (quoting *Free v. Pelkar*, No. 17-cv-00159-AWI-MJS, 2018 WL 1569030, at *2 (E.D. Cal. Mar. 30, 2018)); *Stratmon v. Morris*, No. 12-cv-1837, 2018 WL 3388406, at *3 (E.D. Cal. July 10, 2018) (finding confiscation and interference with mail under First Amendment presents a new context); *Pinson v. United States DOJ*, No. 12-1872, 2021 U.S. Dist. LEXIS 41262, at *21 (D.D.C. Jan. 8, 2021) ("The Court therefore agrees with nearly every other court to have addressed the issue and hold that prisoners cannot bring First Amendment retaliation cases under *Bivens*."); *Oneil v. Rodriguez*, 18-cv-3287, 2020 U.S. Dist. LEXIS 181275, at *11 (E.D.N.Y. Sept. 30, 2020); *Howard v. Lackey*, No. 7:16-129, 2018 WL 1211113, at *3 (E.D. Ky. March 7, 2018) (First Amendment retaliation claim based on failure to receive single piece of mail raised a new context); *Harris v. Dunbar*, Case No. 17-cv-536-WTL, 2018 WL 3574736, at *3 (S.D. Ind. July 25, 2018) (First Amendment interference with mail claim presents a new context). District courts within the Seventh Circuit align with these other courts. *See, e.g., Sargeant*, Case No. 19-cv-50187-IDJ, 2021 WL 2473805, at *2 (N.D. Ill. June 17, 2021) (answering the question of whether federal inmates have a *Bivens* claim under the First Amendment for retaliation after *Abbasi* with a

"unanimous and resounding . . . 'No!'"); *Silva v. Ward*, No. 16-cv-185, 2019 WL 4721052, at *9 (W.D. Wis. Sept. 26, 2019); *Atkinson v. Broe*, No. 15-cv-386-WMC, 2019 WL 231754, at *18 (W.D. Wis. Jan. 16, 2019); *Borowski v. Baird*, Case No. 16-cv-848-JPG, 2018 WL 6583976 (S.D. Ill. Dec. 14, 2018); *White v. Inch*, Case No. 17-cv-1059-JPG, 2018 WL 6584899 (S.D. Ill. Dec. 14, 2018); *Bradley v. Granger*, Case No. 17-cv-41-JMS, 2018 WL 3022653, at *2-3 (S.D. Ind. June 18, 2018); *Muhammad v. Gehrke*, Case No. 15-cv-334-WTL, 2018 WL 1334936, at *2-3 (S.D. Ind. March 15, 2018); *Harris v. Dunbar*, Case No. 17-cv-536-WTL, 2018 WL 3574736, at *3 (S.D. Ind. July 25, 2018).

The Seventh Circuit has not squarely addressed the issue post-*Abbasi*. *See, e.g. Smadi v. True, et al.*, 783 F. App'x 633 (7th Cir. Nov. 8, 2019) (remanding for further briefing on the issue); *Haas v. Noordeloos*, 792 F. App'x 405, 406 (7th Cir. 2020) (same). Prior to *Abbasi*, the Seventh Circuit assumed the existence of a *Bivens* remedy for some types of First Amendment violations. *See, e.g., King v. Fed. Bur. of Prisons*, 415 F.3d 634 (7th Cir. 2005) (First Amendment freedom of speech); *Herron v. Meyer*, 820 F.3d 860, 861 (7th Cir. 2016) (First Amendment retaliation claim); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (First Amendment retaliation claim). Since *Abbasi*, however, the Seventh Circuit has recognized that the "*Bivens* framework has narrowed substantially to limit lawsuits against federal agents" and acknowledged that its "past pronouncements are thus not controlling." *White v. Sloop*, 772 F. App'x 334 (7th Cir. 2019) (citing *Vanderklok v. United States*, 868 F.3d 189, 199 (3d Cir. 2017) (declining to recognize First Amendment *Bivens* claim, even though the court presumed the claim existed pre-*Abbasi*). And, the Seventh Circuit has repeatedly suggested that there is no *Bivens* remedy for violations of the First Amendment. *See, e.g.*, *Sebolt v. Samuels*, 749 F. App'x 458, 459 (7th Cir. 2018); *Borowski v. Bechelli*, 772 F. App'x 338, 339 (7th Cir. 2019).

14

When determining whether a claim presents a new context, the *Abbasi* Court instructs lower courts to read *Bivens* narrowly. *Id*. at 1856-57. Consistent with this authority, this Court finds that the differences noted here are meaningful. Smadi's First Amendment claims present a new *Bivens* context, and special factors counsel hesitation in further expansion of the *Bivens* remedy to include First Amendment claims. The *Bivens* claims in Counts 1-4 and 6 were thus properly dismissed with prejudice against the individual defendants as being foreclosed post-*Abbasi*. No official capacity claims for declaratory and injunctive relief were properly alleged, and those claims should have been dismissed *without* prejudice and with leave to re-plead them in a First Amended Complaint.

## DISPOSITION

**IT IS ORDERED** that **COUNTS 1, 2, 3, 4,** and **6** against Defendants **TRUE, BROWN, BURGESS, HILL, BYRAM,** and **MICHAELIS**, in their individual capacities, are **DISMISSED** with prejudice for failure to state a claim for relief because they represent an unauthorized expansion of the *Bivens* remedy post-*Abbasi*.

**IT IS ORDERED** that all official capacity claims against these defendants are **DISMISSED** without prejudice for failure to state a claim.

Smadi is **GRANTED** leave to file a First Amended Complaint on or before **AUGUST 9, 2021**, if he chooses to proceed with any claims for declaratory or injunctive relief in this action. He is **WARNED** that failure to file an amended complaint in this case by the deadline shall result in dismissal of the action with prejudice. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: July 8, 2021**

                                          s/ *J. Phil Gilbert*
                                          **J. PHIL GILBERT**
                                          **United States District Judge**