IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **HOSAM MAHER SMADI, #39482-177,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 18-cv-2149-JPG |
| | ) |
| **MERRICK GARLAND,** | ) |
| **MICHAEL CARVAJAL,** | ) |
| **ANDRE MATEVOUSIAN,** | ) |
| **FEDERAL BUREAU of PRISONS,** | ) |
| **WILLIAM TRUE, T.C. BROWN,** | ) |
| **GARY BURGESS, KATHY HILL, and** | ) |
| **S. BYRAM,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is before the Court for a merits review of the First Amended Complaint (Doc. 65) and to address Defendants' contention that Plaintiff's financial resources make him ineligible for representation by recruited *pro bono* counsel.

### BACKGROUND

Plaintiff Hosam Maher Smadi, a federal prisoner, brought this action *pro se* in December 2018, seeking damages pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) for alleged violations of his First Amendment rights when prison officials restricted his outgoing mail during 2016 and 2018. (Doc. 1). During that time, Plaintiff was incarcerated at the USP-Marion, Illinois, and held in the Communications Management Unit ("CMU"). The CMU is a separate unit within the prison. Its purpose is to "enabl[e] [prison] staff to more effectively monitor communication between inmates in CMUs and persons in the community" which "is necessary to

1

ensure the safety, security, and orderly operation of correctional facilities, and protection of the public." 28 C.F.R. § 540.200(c). Federal regulations establish the criteria for placement of an inmate in the CMU. 28 C.F.R. § 540.201. Examples of these criteria include inmates whose offense of conviction or offense conduct was related to terrorism or where that offense or the inmate's activity while incarcerated indicates a "substantial likelihood" that the inmate will continue to encourage or facilitate illegal activity through communications with persons in the community. *Id.* The regulations also set forth procedures for designating an inmate to the CMU, which includes notice to the inmate and regular review. 28 C.F.R. § 540.202. An inmate may challenge the CMU designation and "any aspect of confinement therein" through the prison's administrative remedy program. *Id.*

Upon initial review of Plaintiff's original *pro se* Complaint under 28 U.S.C. § 1915A, the Court severed one claim into a new case and dismissed the remaining claims and the Complaint. (Doc. 12). Plaintiff appealed, and the Seventh Circuit reversed the dismissal of the First Amendment claims with instructions to obtain counseled briefing on whether those claims for damages may proceed after *Ziglar v. Abbasi*, 582 U.S. 120 (2017), and under what authority Plaintiff may be able to seek an alternative remedy such as injunctive relief. (Docs. 28, 29). The appellate court affirmed the dismissal of Plaintiff's due process challenge to his CMU placement (Count 5 of the original Complaint). (Doc. 28-1, p. 2).

The claims to be reconsidered pursuant to the Order remanding the case were:

**COUNT 1**:  Defendants Burgess, Hill, and True violated Plaintiff's rights under the First Amendment when they refused to let him send legal mail to the Jordanian ambassador and attorney Scott Fenstermaker.

**COUNT 2**:  Defendant Brown violated Plaintiff's rights under the First Amendment when he refused to let him use the TRULINC email system to send blog posts to *Prison Inmates Online*.

2

> **COUNT 3**: Defendants Burgess, Hill, and True violated Plaintiff's rights under the First Amendment when they refused to let him send blog posts, collages, and news articles to *Prison Inmates Online.*
>
> **COUNT 4**: Defendants Hill and True violated Plaintiff's rights under the First Amendment when they refused to let him communicate by mail with Marie-Pier Frigon.
>
> **COUNT 6**: Defendants Byram and True retaliated against Plaintiff in violation of the First Amendment by keeping Smadi in the CMU in retaliation for sending regular and legal mail.

(Doc. 12, p. 4; Doc. 59, pp. 2-3).

Following consideration of counseled briefing, this Court concluded that post-*Abbasi*, Plaintiff could not pursue a damages remedy for these First Amendment claims as that would represent an unauthorized extension of *Bivens*. The Court dismissed with prejudice the above-listed claims against the Defendants in their individual capacities. (Doc. 59, p. 15). The Court further found that Plaintiff had not properly alleged any official capacity claims for declaratory or injunctive relief and granted him leave to file a First Amended Complaint to present those claims. *Id.* Plaintiff's amended pleading was filed by recruited counsel at Doc. 65.

Before the First Amended Complaint was screened under 28 U.S.C. § 1915A, the United States Attorney's Office sought and received an extension of time to answer.[1] (Docs. 68, 69). They further questioned Plaintiff's continued eligibility for court-recruited counsel, given prison trust fund activity indicating deposits and withdrawals totaling almost $15,000 over the six-month period preceding his transfer to USP-Terre Haute in early 2021. (Docs. 68, 70). Plaintiff was ordered to provide the Court with his trust fund records so that his indigent status and eligibility for court-recruited counsel could be assessed. (Docs. 69, 74). Plaintiff provided the required

---

[1] In granting the extension, the Court noted: "The First Amended Complaint must be screened pursuant to 28 U.S.C. 1915A before it can be served on the defendant(s) and the time for answering or responding begins to run." (Doc. 69).

3

information at Doc. 77.

## PLAINTIFF'S FINANCIAL STATUS

Based on Plaintiff's explanation of his trust fund transactions and the certified trust fund account report for the period August 2020 through August 2021 (Doc. 77), the Court is satisfied that he qualifies for indigent status. (See *Smadi v. Michaelis, et al.*, Case No. 19-cv-217-JPG, Doc. 63, pp. 2-3, Nov. 10, 2021). Plaintiff was transferred from USP-Marion to FCI-Terre Haute on October 7, 2020, and on October 8, 2020, his account balance of $696.42 was transferred to his new prison.[2] (Doc. 77, pp. 2-3, 5-6, 58). He asserts he has never had more than $500.00-1,000.00 in his prison account at any time during his incarceration of ten years at the time, and his attached financial records bear this out for the period between August 2020 and October 2021. Plaintiff believes the balances shown on Defendants' document represent an error or computer glitch, or possibly represent a cumulative sum of deposits and withdrawals for the past ten years. (Doc. 77, pp. 2-3). His Motion and Affidavit to Proceed in District Court Without Prepaying Fees or Costs states that he receives about $500.00 every two or three months from family. (Doc. 77, pp. 7-9).

As of August 1, 2020, Plaintiff's account balance was $712.77. (Doc. 77, p. 35). His records show transactions and the running balance in August, September, and October 2020 while he remained at Marion and the transfer of funds to USP-Terre Haute in October 2020. (Doc. 77, pp. 5-6, 35). Plaintiff's USP-Terre Haute trust fund transactions and balances, and TRULINCS transactions from October 2020 through October 2021 are also documented. (Doc. 77, pp. 5, 12-34, 37-44, 46-58). He received five deposits during that time:[3] $500.00 on November 5, 2020 (Doc. 77, p. 5, 58) and February 16, 2021 (Doc. 77, pp. 18, 30, 38, 53); $499.99 on May 9, 2021 (Doc. 77, pp. 14, 23, 41, 49); $500.00 on July 26, 2021 (Doc. 77, pp. 12, 21, 43, 47); and $539.48 on

---

[2] The statement also shows a transfer of another $11.00 on October 9, 2020. (Doc. 77, p. 5-6, 58).
[3] Each date's transaction is documented more than once on different pages of Plaintiff's records.

October 7, 2021 (Doc. 77, pp. 12, 44). After each of these deposits, Plaintiff's account balance was under $900.00. As of October 28, 2021, the Trust Fund Officer certified that Plaintiff had $294.35 on account at USP-Terre Haute. (Doc. 77, p. 36). This information contradicts the "National 6 Months Deposits" and withdrawals in excess of $14,000.00 submitted by Defendants.[4]

Based on the above documentation, the Court finds no reason to disturb the Order recruiting counsel to represent Plaintiff in this matter. (Doc. 36).

## MERITS REVIEW OF THE FIRST AMENDED COMPLAINT (DOC. 65)

The Court is required to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the First Amended Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

According to the allegations in the First Amended Complaint, Plaintiff is a Jordanian national, currently serving a 24-year sentence at FCI-Terre Haute, Indiana. (Doc. 65, pp. 2, 4). He has been held in the CMU, either at USP-Terre Haute or at USP-Marion since his sentencing in 2011.[5] He asserts that Defendants' actions are violating his rights under the First, Fifth, and Eighth Amendments and the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq*. He seeks declaratory and injunctive relief, including an order returning him to general population and lifting his communication restrictions. The Defendants (all sued in their official capacity) are: Merrick Garland (U.S. Attorney General), Michael Carvajal (Director of the Federal Bureau of Prisons),

---

[4] One of Plaintiff's transaction records shows a "National 6 Months Deposits" of $1,539.47 and "National 6 Months Withdrawals" of $1,183.00 (Doc. 77, p. 13, dated 10/21/21); another lists these figures as $1,539.47 and $1,235.05, respectively (Doc. 77, p. 45, dated 10/28/2021). Still others show zero balances for those 6-month figures (Doc. 77, pp. 15, 17, 19, dated 10/21/21 and 10/25/21).
[5] Plaintiff was sent to the CMU at FCI-Terre Haute in January 2011 after pleading guilty to attempted use of a weapon of mass destruction. (Doc. 65, p. 4). He was transferred to the USP-Marion CMU in September 2015. In July 2020, he was transferred back to the FCI-Terre Haute CMU. *Id.* His expected release date is December 3, 2030. *Id.*

Andre Matevousian (Assistant Director, Correctional Programs Division of the Federal Bureau of Prisons), the Federal Bureau of Prisons ("BOP"), William True (USP-Marion Warden), T.C. Brown (BOP Intelligence Analyst at Morgantown, WV), Gary Burgess (USP-Marion Case Manager); Kathy Hill, (USP-Marion Intelligence Research Analyst), and S. Byram (USP-Marion Unit Manager). (Doc. 65, pp. 1, 4-6).

Plaintiff explains that the CMUs were created in 2006 and 2007. Prisoners held there are not allowed to have any physical contact with visitors. Their phone calls, in-person visits, and written communications are monitored, severely restricted, and may be arbitrarily denied. (Doc. 65, pp. 2, 6-7). CMU inmates have only limited access to educational and psychological programming, and no access to recreation, library, or chaplain services. *Id.* He contends these restrictions atypically and significantly curtail his ability to communicate with the outside world, causing him severe emotional distress and psychological injury. (Doc. 65, pp. 2-3).

In December 2016 and January, March, and November 2017, Defendant Burgess denied Plaintiff permission to mail a letter to the Jordanian ambassador in Washington, D.C. (Doc. 6, pp. 7-8). In December 2017, Defendants Hill and Burgess blocked Plaintiff from writing to an attorney seeking representation to file a civil rights action. (Doc. 65, p. 8). In January and December 2017, and March 2018, Defendants Brown and True prevented Plaintiff from submitting blog posts and other material to *Prison Inmates Online*. Defendants Hill and Burgess denied Plaintiff permission in March 2018 to send collages to *Prison Inmates Online*. In February 2018, True denied Plaintiff permission to communicate with an individual (Marie-Pier Frigon) regarding publishing information about his case online. (Doc. 65, pp. 8-9). Plaintiff asserts that because he has nearly ten years remaining on his sentence, there is a reasonable probability he could again be transferred to USP-Marion – thus the issues above are capable of repetition and his controversy is not moot.

(Doc. 65, p. 9).

Plaintiff asserts the CMUs were created by the Bureau of Prisons without the opportunity for public notice and comment, in violation of the APA. (Doc. 65, p. 2).

Plaintiff's placement in the CMU is for an indefinite period and, he alleges, was done without any procedural protections or meaningful review process. (Doc. 65, pp. 2-3, 9-10). He claims his assignment there was based on his religious and/or perceived political beliefs, or in retaliation for other protected First Amendment activity. At USP-Marion, Defendant Byrum informed Plaintiff that Defendant True decided to keep him in the CMU. (Doc. 65, p. 7). Plaintiff has been given inconsistent information on the reasons for his CMU placement, including concern for his own security and for violations of communications and national security. (Doc. 65, p. 9). He has not had any opportunity to challenge his continued placement in the CMU or earn his release into general population. (Doc. 65, p. 10). He concludes that his CMU placement cannot be explained by any non-discriminatory reason. *Id.*

Invoking this Court's jurisdiction under 28 U.S.C. § 1331, the Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202), and the APA (5 U.S.C. § 551, *et seq.*), Plaintiff raises the following claims in the First Amended Complaint:

Count 1: Fifth Amendment procedural due process claim against all Defendants for subjecting Plaintiff to atypical and significant hardship and depriving him of liberty by placing him in the CMU without notice, hearing, the ability to contest the placement, regular review of the ongoing placement, or notice of the projected duration of placement or criteria for release from the CMU.

Count 2: Fifth Amendment substantive due process claim against all Defendants for unreasonably and excessively restricting Plaintiff's communications with the outside world without a legitimate penological purpose.

Count 3: First Amendment Free Association claim against all Defendants for subjecting Plaintiff to arbitrary and unjustified restrictions on his

7

| | |
|---|---|
| | communications without legitimate penological purpose. |
| Count 4: | Eighth Amendment Cruel and Unusual Punishment claim against all Defendants for subjecting Plaintiff to excessive, cruel, inhuman, and degrading conditions of confinement in the CMU. |
| Count 5: | First Amendment Retaliation and Fifth Amendment Equal Protection claims against all Defendants for creating and maintaining the policy of confining prisoners in the CMU without procedural protections and allowing Plaintiff to be housed in the CMU in retaliation for or based on his protected political and religious speech/beliefs. |
| Count 6: | Administrative Procedures Act claim against the BOP for creating the CMUs at FCI-Terre Haute and USP-Marion without following the required notice and comment rulemaking procedures under 5 U.S.C. §§ 553 and 552(a). |

(Doc. 65, pp. 10-14).

In addition to seeking a declaration that Defendants violated his constitutional rights and the APA, Plaintiff seeks an order transferring him to general population or providing him with due process to ensure his CMU placement was appropriate and devoid of discriminatory intent, and requiring Defendants to allow him the same communication opportunities as prisoners in general population. (Doc. 65, p. 15).

## Discussion

### Counts 1 and 2

The Seventh Circuit remanded this matter for this Court to recruit counsel and receive adversarial briefing on the First Amendment claims for damages post-*Abbasi*, including whether an alternative remedy such as injunctive relief may be available. (Doc. 28-1, p. 3). However, the order remanding this matter affirmed this Court's dismissal with prejudice of Plaintiff's due

8

process claim,[6] which had been designated as Count 5 in the original merits review order at Doc. 12, pp. 7-8:

> [T]he district court properly dismissed Smadi's due-process challenge to his placement in the restricted unit because that claim is indistinguishable from the due-process claim rejected in *Abbasi*. *See* 137 S. Ct. at 1858-64.

(Doc. 28-1, p. 2). Accordingly, the dismissal of Plaintiff's due process claim still stands. His attempt to re-plead the Fifth Amendment due process claims in Counts 1 and 2 of the First Amended Complaint is foreclosed under the Seventh Circuit's order and these claims are dismissed.

**Count 3**

This claim invokes Plaintiff's First Amendment right to free speech and association, challenging the CMU communications restrictions as lacking legitimate penological purpose as well as being arbitrary and unjustified. Reasonable restrictions on prison inmates' First Amendment rights to association and speech have withstood constitutional scrutiny. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). Whether the CMU restrictions have been unconstitutionally imposed in Plaintiff's case will require further factual development and analysis. At this juncture, Count 3 is not subject to dismissal under § 1915A.

**Count 4**

This claim asserts that Defendants' excessive restrictions on Plaintiff's ability to communicate with persons outside the prison violates the Eighth Amendment prohibition on cruel and unusual punishment. Prison conditions that deprive an inmate of basic human needs for food,

---

[6] This Court's threshold merits review order outlined the due process claim in Count 5 as: "Defendants Byram and True violated Plaintiff's Fifth Amendment due process rights when they kept him in USP Marion's CMU without a hearing or other process." (Doc. 12, p. 4).

9

medical care, sanitation, or physical safety have been held to violate the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). The Court is unaware of any authority holding that restrictions on an inmate's communications with outsiders implicates Eighth Amendment concerns, and Plaintiff provides none. Instead, Count 4 appears to be duplicative of Plaintiff's First Amendment claims. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional labels"). As such, the Eighth Amendment claim in Count 4 will be dismissed without prejudice.

### Count 5

For this claim, Plaintiff asserts that Defendants have housed him in the CMU in retaliation for his protected political and religious speech and beliefs in violation of his First Amendment rights to freedom of speech and religion or have housed him there based on his religion, national origin, and perceived political and/or ideological beliefs, in violation of his Fifth Amendment right to equal protection of the law. Count 5 is not subject to dismissal under 28 U.S.C. § 1915A and will proceed for further consideration.

### Count 6

Count 6 is brought against the BOP only. Plaintiff asserts that the creation and implementation of the CMUs at FCI-Terre Haute and USP-Marion constituted new substantive rules and final agency action that required the BOP to comply with the notice and comment procedures required under 5 U.S.C. §§ 553 and 552(a) of the Administrative Procedures Act. He claims the BOP failed to follow those statutory requirements, and consequently he is entitled to declaratory and injunctive relief. The APA allows an individual to bring a suit for judicial review

of a final agency determination. 5 U.S.C. § 702. Count 6 is also not subject to dismissal at this stage and will proceed.

## DISPOSITION

The First Amended Complaint states colorable claims in Counts 3, 5, and 6. Counts 1 and 2 are **DISMISSED with prejudice.** Count 4 is **DISMISSED** without prejudice.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants Merrick Garland (U.S. Attorney General), Michael Carvajal (BOP Director), Andre Matevousian (BOP Assistant Director, Correctional Programs Division), William True (USP-Marion Warden), T.C. Brown (BOP Intelligence Analyst), Gary Burgess (USP-Marion Case Manager); Kathy Hill, (USP-Marion Intelligence Research Analyst), S. Byram (all in their official capacities), and the Federal Bureau of Prisons; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants Garland, Carvajal, Matevousian, True, Brown, Burgess, Hill, Byram, and the BOP pursuant to Rule 4(e) of the Federal Rules of Civil Procedure. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the First Amended Complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the First Amended Complaint, and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes

the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 3/31/2023**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**
